IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TOVIA LAFAELE,

      Plaintiff,                       No. CIV S-06-1049 FCD DAD P

    vs.

ARNOLD SCHWARZENEGGER,

      Defendant.                ORDER

_____/

       Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief under 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to the undersigned by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1).

       In accordance with the court's order filed May 30, 2006, plaintiff has filed a properly completed application to proceed in forma pauperis. The in forma pauperis application filed on June 27, 2006, makes the showing required by 28 U.S.C. § 1915(a). Accordingly, plaintiff will be granted leave to proceed in forma pauperis.

       Plaintiff is required to pay the statutory filing fee of $350.00 for this action. See 28 U.S.C. §§ 1914(a) & 1915(b)(1). Plaintiff has been without funds for six months and is currently without funds. Accordingly, the court will not assess an initial partial filing fee. See 28

1

U.S.C. § 1915(b)(1).  Plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to his prison trust account.  These payments shall be collected and forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's prison trust account exceeds $10.00, until the filing fee is paid in full.  See 28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1) and (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. See Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  See Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court accepts as true the allegations of the complaint.  See Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976).  The court also construes the pleading in the light most favorable to the plaintiff and resolves doubts in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires an actual connection or link between the actions of each defendant and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In the present case, plaintiff asserts that his constitutional rights have been violated by the ban on tobacco products in California state prisons. The defendant is the current governor of the State of California, sued solely in his individual capacity. Plaintiff seeks damages as well as declaratory and injunctive relief.

Plaintiff alleges as follows: defendant acted under color of state law when he approved legislation in 2005 requiring the California Department of Corrections to ban all tobacco products in state prisons; the legislation lacked a justifiable legal ground because tobacco is not a penological security threat, and the ban on tobacco products destroys plaintiff's sense of

individuality and responsibility; the legislation is punitive because plaintiff has no desire to stop smoking; the legislation did not consider both the pros and cons of smoking, was an "unfair assault on a tax-driven product," gave a sweeping victory to anti-smoking groups, and failed to minimize the burden of hardship on plaintiff; the governor and the legislature are required to legislate fairly for all Californians, including criminals and pro-smoking groups; plaintiff filed a grievance in which he claimed that "tobacco and prison are inextricably connected" and requested that the ban "be done away with"; plaintiff's grievance was denied at all levels; plaintiff sent written comments to Sacramento asserting that the ban is "crime-inspiring."

Plaintiff makes the following arguments: health care costs and concerns are not adequate legal grounds for the tobacco ban because other state-run prisons have similar costs and concerns but have not used them as a basis for banning tobacco; the state of California and the California Department of Corrections "are not legally required to be concerned and protective of plaintiff's health in any way with respect to the negative effect of tobacco consumption," despite the fact that they are responsible for the maintenance of plaintiff's health and the cost thereof; defendant is bound by law to meet plaintiff's every need and desire, including his need and desire to buy and consume tobacco, because the desire to consume tobacco "is an unrestrained liberty interest guaranteed by law" and is "a personal choice by natural desire that cannot be prohibited"; the ban on tobacco in California prisons is discriminatory because thousands of inmates in prisons in other states continue to exercise their freedom to buy and consume tobacco; the ban tempts correctional staff to sell contraband tobacco to prisoners; for plaintiff, tobacco is therapeutic because it helps suppress emotions that could lead to violence; prison riots have erupted because of the tobacco ban, and such a riot at Calipatria State Prison thirty-seven days after the ban was imposed resulted in the death of a prisoner; plaintiff's ability to concentrate has been so affected by the ban that it takes him two months to write a limerick; the tobacco ban has caused plaintiff to suffer emotional and physical symptoms; the tobacco ban is one of many actions taken by defendant Schwarzenegger that are unfavorable to prisoners.

Plaintiff seeks relief on four claims: (1) plaintiff has a liberty interest in smoking in prison and the tobacco ban violates his right to due process; (2) the tobacco ban prevents plaintiff from fulfilling his desire to smoke and places physical and emotional strain on plaintiff without providing an alternative, subjecting plaintiff to cruel and unusual punishment without due process; (3) the tobacco ban discriminates against plaintiff because out-of-state prisoners can buy and consume tobacco and defendant himself has a smoking chamber to accommodate his own desire to smoke; (4) defendant violated plaintiff's freedom of speech by approving the tobacco ban without hearing and considering the views of pro-smoking groups.

Attached to plaintiff's complaint is a copy of a statement of reasons for revising the departmental regulations to conform to various new state requirements that became effective on July 5, 2005. With regard to the law prohibiting the possession or use of tobacco by inmates and by non-inmates in the presence of inmates, the document states that tobacco prohibition "promotes a healthier workplace as well as carries a potential to reduce healthcare and disability costs to the Department by minimizing the exposure of inmates and staff to tobacco products where inmates are present." (Compl., Ex. A at 1.) The document states the department's intention to provide information and promote tobacco cessation programs for inmates and staff. The document notes that the prohibition on possession "will also reduce the temptation and opportunity for staff, inmates, and visitors to the institutions to traffic in tobacco on institution/facility grounds, or where inmates are present, and supplying contraband to inmates." (Id.) The document states that "health care costs associated with tobacco use are well documented by the Center for Disease Control, the Heart and Lung Associations, the Surgeon General, and professionals in Public Health." (Id.) The document also observes that private employers promote tobacco cessation and employee wellness programs to help reduce health care costs. (Id.)

Plaintiff has provided a copy of his inmate appeal dated July 9, 2005. (Id., Ex. B.) In describing his problem, plaintiff states that he was deprived of tobacco without preparation for

the psychological effect of such deprivation, that he experienced confusion, anger, and distress, and that he was suffering physical symptoms such as profuse sweating, an eating problem, a skin rash, restlessness, and loss of desire to engage in recreational activities.  Plaintiff complained that he had not been assigned a psychologist to minimize the hardships caused by the tobacco ban.  Plaintiff also complained that the state failed to provide alternatives, failed to implement the ban gradually, and punished him despite the fact that he had not committed a culpable offense.  The action requested by plaintiff was for the warden of California State Prison-Solano and the director of the California Department of Corrections to "take issue" with the governor and bring about a nullification of the tobacco ban.  (Id. at 1 & 3.)

Plaintiff's appeal was denied at the first level on August 10, 2005.  Plaintiff sought second-level review, adding a request for assignment of a psychologist to help him "weather the adverse effect" of the tobacco ban.  (Id. at 2.)  In the second-level response, dated December 5, 2005, the warden stated that all prisoners received several months' notice of the smoking ban.  (Id. at 5.)  The warden encouraged plaintiff to participate in narcotics/alcoholics anonymous and other programs when available for help with the physical and psychological effects of smoking cessation.  (Id.)  The warden also advised plaintiff to submit a medical request form to be seen by a psychologist for support with regard to the effects of the tobacco ban.  (Id. at 5-6.)  On December 22, 2005, plaintiff sought relief at the third level on the ground that the institution had done nothing to remedy the tobacco ban.  (Id. at 2.)  In the third-level decision, dated March 15, 2006, the director noted that (1) smoking in housing units and certain common areas had been banned in state prison for several years prior to the ban of all tobacco products, (2) the tobacco ban was implemented only after a grace period that provided inmates with an opportunity to stop smoking, (3) plaintiff failed to utilize earlier opportunities to stop smoking, and (4) activity groups and programs were available to help plaintiff overcome his addiction to tobacco products.  (Id. at 7.)

/////

1           The Due Process Clause of the Fourteenth Amendment guarantees that no person
2   may be deprived "of life, liberty, or property, without due process of law."  A person asserting a
3   violation of the right to due process must allege facts showing that he was deprived of an interest
4   cognizable under the Due Process Clause and that the procedures attendant on the deprivation
5   were not constitutionally sufficient.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S.
6   454, 459-60 (1989); Board of Regents v. Roth, 408 U.S. 564, 571 (1972).  Liberty interests in the
7   prison context are generally limited to freedom from restraints that "impose atypical and
8   significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v.
9   Conner, 515 U.S. 472, 484 (1995).  Even severe hardship does not rise to the level of a
10  constitutional violation unless it is both atypical and significant.  Id.
11          "In upholding smoking restrictions, courts have held that smoking is not a liberty
12  interest protected by the due process clause."  Thiel v. Nelson, 422 F. Supp. 2d 1024, 1030 (W.D.
13  Wis. 2006).  The Thiel court cited "an avalanche of cases in which federal courts have rejected
14  constitutional challenges to smoking restrictions in prisons."  Id. at 1029.  In contrast, there does
15  not appear to be any case in which a federal court has held that smoking is a liberty interest
16  cognizable under the Due Process Clause.  In addition, plaintiff's allegations fail to demonstrate
17  that the California's ban on tobacco in state prisons imposes atypical and significant hardship in
18  relation to the ordinary incidents of prison life.  Plaintiff's due process claim lacks an arguable
19  basis in law and should be dismissed as legally frivolous.
20          The Equal Protection Clause guarantees that "[n]o State shall . . . deny to any
21  person within its jurisdiction the equal protection of the laws."  This provision "is essentially a
22  direction that all persons similarly situated should be treated alike."  City of Cleburne v.
23  Cleburne Living Center, 473 U.S. 432, 439 (1985).  To state an equal protection claim, a plaintiff
24  must allege (1) membership in a suspect class, (2) deprivation of a fundamental right, or (3)
25  enforcement of state laws or regulations in an arbitrary or invidiously discriminatory manner.
26  State action that does not implicate either a fundamental right or a suspect classification will pass

constitutional muster under the Equal Protection Clause if it bears a rational relation to a legitimate state interest.  Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998) (per curiam) (citing Coakley v. Murphy, 884 F.2d 1218, 1221-22 (9th Cir. 1989)); Armendariz v. Penman, 75 F.3d 1311, 1326 (9th Cir. 1996).  A person who alleges denial of equal protection bears the burden of establishing a prima facie case of discrimination.  See United States v. Estrada-Plata, 57 F.3d 757, 760 (9th Cir. 1995).

Prisoners are not members of a protected class solely on the basis of their status as prisoners, Rodriguez v. Cook, 169 F.3rd 1176, 1179 (9th Cir. 1999); Webber, 158 F.3d at 461, and smoking is not a fundamental right, Webber, 158 F.3d at 461; Beauchamp v. Sullivan, 21 F.3d 789, 790 (7th Cir. 1994).  The plaintiff in the present case has not shown that he is a member of a suspect class or that he has been deprived of a fundamental right.  Furthermore, plaintiff's own allegations and exhibits demonstrate that the ban on tobacco in state prisons bears a rational relation to legitimate governmental objectives.  The reasons cited for banning tobacco in California state prisons include promotion of a healthier workplace, potential reduction in healthcare and disability costs, and reduction in the temptation and opportunity for staff, inmates, and visitors to traffic in contraband.  The state noted health care costs associated with tobacco use as documented by the Center for Disease Control, the Heart and Lung Associations, the Surgeon General, and public health professionals.  The state also noted that private employers promote tobacco cessation and employee wellness programs to help reduce health care costs.  It is well established that protecting the health and safety of inmates and staff by providing a clean air environment is a legitimate governmental objective.  See Webber, 158 F.3d at 461 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).  See also Thiel, 422 F. Supp. 2d at 1030 (holding that the smoking ban at a mental health facility for Wisconsin patients involuntarily committed pursuant to a sexually-violent-persons statute is rationally related to legitimate penological interests in improving inmate health and safety, reducing fire hazards, maintaining clean and sanitary conditions, and reducing complaints and the threat of litigation from inmates who do not

1  smoke); Brashear v. Simms, 138 F. Supp. 2d 693, 694 (D. Md. 2001) ("It should be perfectly
2  obvious to any rational person that the State of Maryland, in view of the well known harmful
3  effects of secondhand smoke, has a legitimate interest in protecting the health of non-smokers
4  forced to be its guests in correctional facilities."); Pauley v. DeJonge, No. CV-04-3144-MWL,
5  2005 WL 3303938, at *4 (E.D. Wash. Dec. 5, 2005) (holding that the smoking ban in
6  Washington state prisons is rationally related to the legitimate state purpose of protecting the
7  health and safety of inmates and staff by providing a clean air environment); Morrison v. Cook,
8  No. 97-57-ST, 1999 WL 717218, at *8 (D. Or. Apr. 27, 1999) (holding that the ban on personal
9  use and possession of tobacco in Oregon state prisons is based on legitimate penological
10 justifications). As these cases demonstrate, smoking restrictions and tobacco bans have been
11 imposed in federal prisons and in the prisons of numerous states. Finally, plaintiff's allegation of
12 discrimination relative to the defendant fails to state an equal protection claim because prisoners
13 and non-prisoners are not similarly situated. See Levingston v. Plummer, No. C 94-4020 VRW,
14 1995 WL 23945, at *1 (N.D. Cal. Jan. 9, 1995) (citing cases from the Third and Eighth Circuits).
15 For all of these reasons, plaintiff's equal protection claim lacks an arguable basis in law and
16 should be dismissed as legally frivolous.

17      The First Amendment provides that "Congress shall make no law . . . abridging
18 the freedom of speech." The First Amendment was made applicable to the states by the
19 Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303-07 (1940). Inmates retain
20 those First Amendment rights that are not inconsistent with their status as a prisoner. Pell v.
21 Procunier, 417 U.S. 817, 822 (1974). However, an inmate's First Amendment rights are
22 "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve
23 legitimate correctional goals or to maintain prison security." McElyea v. Babbitt, 833 F.2d 196,
24 197 (9th Cir. 1987) (per curiam). In the present case, plaintiff does not allege that the legislation
25 banning tobacco in state prisons abridges the freedom of speech. Rather, plaintiff contends that
26 the defendant violated plaintiff's freedom of speech by approving the tobacco ban without

hearing and considering the views of pro-smoking groups.  Plaintiff's claim is based on mere speculation and is not based on a law that abridges his freedom of speech but at the political process.  Plaintiff's First Amendment claim lacks an arguable basis in fact or in law and should be dismissed as both legally and factually frivolous.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  It is the "unnecessary and wanton infliction of pain" that constitutes cruel and unusual punishment prohibited by the United States Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  In order to state an Eighth Amendment claim, a prisoner must allege facts that satisfy a two-part test.  First, he must allege facts showing that objectively he suffered a sufficiently serious deprivation.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  The objective prong of the test requires the court to consider whether the alleged wrongdoing was harmful enough to establish a constitutional violation in the context of contemporary standards.  Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298.  Second, the plaintiff must allege facts showing that subjectively the defendant had a culpable state of mind in allowing the deprivation to occur.  Wilson, 501 U.S. at 299.  Put another way, the plaintiff must show that the official acted with deliberate indifference.  See id.

In the present case, plaintiff alleges that the tobacco ban caused him to suffer inability to concentrate as well as various emotional and physical symptoms.  Plaintiff contends that defendant failed to spare plaintiff physical and emotional strain and failed to provide acceptable alternatives to smoking tobacco.  Plaintiff's claim is not based on factual allegations that meet the two-part test.  The alleged wrongdoing does not appear to be harmful enough to establish a constitutional violation in the context of contemporary standards of decency, and plaintiff has not alleged facts showing that subjectively defendant had a culpable state of mind.  Plaintiff's Eighth Amendment claim must be dismissed for failure to state a claim.

It is possible that plaintiff may be able to amend his complaint to state Eighth Amendment claims against correctional or medical staff for failing to provide constitutionally adequate treatment for the physical and psychological suffering identified in plaintiff's inmate appeal. Plaintiff has not alleged any facts concerning his efforts, if any, to obtain relief through smoking cessation programs and other resources available at his institution. Nor has plaintiff alleged exhaustion of administrative remedies against any correctional or medical staff members for failing to provide constitutionally adequate care. Plaintiff's complaint will be dismissed with leave to file an amended complaint alleging Eighth Amendment claims against appropriate defendants, if plaintiff exhausted any such claims before he filed this action on May 12, 2006.

If plaintiff chooses to file an amended complaint, he must demonstrate how the defendants' acts resulted in a deprivation of federal rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The amended complaint must allege in specific terms how each named defendant was involved in the deprivation of those rights. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between each defendant's actions and the claimed deprivation. See Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Every amended complaint must be complete in itself without reference to a prior pleading. Local Rule 15-220. If plaintiff files an amended complaint, that pleading will supersede the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Thus, in an amended complaint, as if it were the original complaint, each claim must be sufficiently alleged.

Plaintiff has filed a second motion for appointment of counsel. By this court's order filed May 30, 2006, plaintiff was informed that the United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). Plaintiff was advised

that, in certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1), but cannot require such assistance.  <u>Terrell v. Brewer</u>, 935 F.2d 1015, 1017 (9th Cir. 1991); <u>Wood v. Housewright</u>, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  Plaintiff's second motion does not demonstrate the existence of exceptional circumstances.  The renewed motion will therefore be denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's June 27, 2006 application to proceed in forma pauperis is granted;

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action; the fee shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith;

3. Plaintiff's June 27, 2006 motion for appointment of counsel is denied;

4. Plaintiff's complaint is dismissed with leave to amend; and

5. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the case number assigned to this case and must be labeled "Amended Complaint"; failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed as legally frivolous and for failure to state a claim.

DATED: July 7, 2006.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
lafa1049.14a